Our next case is Julianne Moses v. Revlon, et al., et al.  Ms. Moses, you ready to go? Yes, sir. Okay, take your time. Thank you very much. Good morning, Justices. I'm Julie Moses, pro se, and I'm... Ms. Moses? Yes. That microphone. Oh, thank you. No, pull it towards you a little bit. There you go. Thank you. Thank you for this opportunity to speak. I'm here to ask you to reverse Justice Sullivan's decision of time bar because I feel that Revlon dominated that pro se case. They refused to meet with me, as Justice Sullivan had ordered. They avoided establishing an accurate timeline, and they said she should have known and don't feel sorry for her. But I want to present to you that I could not have known because there were so many breaches and ad hoc... Didn't you think, though, that your husband's benefits were supposed to go up when he reached 65? No, Your Honor, I did not. Never thought that. No, because I was led to believe that this disability pension, because of all of the problems that we had getting it signed with the attorney, I was led to believe that that was it and it was over. They put a clause in, this replaces everything else that was discussed. Revlon never acknowledged the official attorney, Attorney Schwartz's election form. It was notarized and signed. They refused to accept that. That would have been the norm, that would have been the vested pension that I should have received at 65, and that's what the election and the legitimate election was, a pension at 65. But Revlon would not acknowledge that, even though it was written and I wrote letters asking for forms. They then presented me with this disability pension, and none of that is within the plan, and none of that is actually legal, and it was signed by my husband, who was incompetent, basically, at the time. They accepted that election but would not accept the legitimate attorney's election. So in my mind, I was done until Social Security found this annuity a few years ago, because I was preparing for my end of life, too, and figuring out what am I going to do? Do I need to sell things? So I asked them to recalculate my survivor's benefits. I was still on Social Security survivor's benefits, thinking that maybe I could find more money in my Social Security, and lo and behold, they unturned up this annuity that Aurora and Revlon had been holding for 24 years, and it's not only a pension that I'm talking about, actually. It's my husband's cash, which is worth as much as the pension would be worth. I mean, essentially, it's under $200,000, but basically, it's a contract. It's this contract that Revlon gave my husband, a personalized annuity purchase statement. They found a way to manipulate and void that statement, void his cash with this ad hoc kind of invented disability. It is not within the plan. The Revlon plan does not provide for a disability pension for anyone like my husband, who worked for 25 years. This annuity represents 25 years of his work. If you have under 10 years, you can get a disability pension, but you cannot get a disability pension if you have more than 10 years. So all of this was kind of disregard for a lot of EBRSA laws. It was a disregard for the pension plan of Revlon and contracts that had been promised. Basically, Revlon said to me, well, you had money earlier, because they gave him, they broke, there was no money available at age 50 when my husband died, because at age 50, that money and that pension was in a lockbox. So they developed this other disability pension to start at 50, and they reduced it down to almost nothing. To say that I had use of the money from early on, it's sort of like, and I'm going to use this corny metaphor, but it explains to you how I feel about this. It's like, before I got sick, they gave me the medicine, and now that I'm really sick, there's not enough medicine to be worthwhile. They just manipulated it. They wiped out his cash, which would be worth over $100,000. I feel that injustice was done here, and I don't feel that Justice Sullivan vetted all of those innuendos and things that happened. I think that Revlon, you know, they just dominated the whole thing, and I was not given, I don't think my issues were vetted properly. Okay, that's it. Thank you, Mrs. Nelson. You've got another minute after we hear from the other lawyers. We'll invite you back up to give any concluding remarks you want to make. Okay, thank you. Mr. Kresge. May it please the Court. I am Raymond Kresge, and I represent the Revlon defendants' appellants, appellees, I should say. The sole issue that's before this Court is whether the district court correctly applied the clear repudiation rule that was set forth by this Court in Cary originally and then refined in Novella for purposes of benefit underpayment or miscalculation cases. That standard provides that a notice of miscalculation can be imputed to a pensioner, and the statute of limitations will start to run when there is enough information available to the pensioner to assure that he knows or reasonably should know of the miscalculation. That's the standard that controls this case and that the district court correctly applied in dismissing Ms. Moses' complaint as time-barred. In Novella, this Court gave us some insight as to how the standard would be applied. First, this Court favorably cited the Third Circuit decision in Miller v. Ford in the case of Pennagins. Alitoro, let me just ask you this. She just said, I had no idea. What's your argument about that she should have known that she was entitled to the higher benefit when her husband would have turned 65? What are the allegations in the complaint that support that view? Specifically, Your Honor, if we take a look at the complaint, there are multiple allegations that show that Ms. Moses knew or should have known from documents that she always had in her possession that there was a pension that she claimed she was entitled to, to have begun in 2004 at a time when her husband would have turned age 65. Specifically, I turn to the complaint, which is docket one in the district court at pages five, six, and seven. And the complaint, Ms. Moses alleges, the disability pension received is $460 per month. The vested pension elected is $4,600 per month. I ask Revlon to recalculate the money I received as a beneficiary and then offset the difference owed from the vested pension, which is legally elected. This is described in the plan. She also alleges in terms of her pleadings and filings that she was the one who actually hired a lawyer back in 1988 when her husband was ill. She was the one who got the plan documents to the lawyer. She is the one who then encouraged the lawyer to participate in requesting this vested pension election. She is the one who then, as according to her complaint allegations, if I proceed, Paul elected the vested pension under her attorney's authority. This witness and notarized election was followed by my, Ms. Moses's, own three letters over the next three consecutive months confirming the election. And so she alleges and has the documents that were before the district court in which she has not only the letters but also the return receipts that were received by Revlon in which she is saying this is the election that we have made and this is, I'm asking for confirmation and if I need to fill any forms out. She then goes on, and this is critical here, is to say that I then received a letter from or we, Mr. Moses and herself, received a letter from Revlon which came in offer for a disability pension that would fill the gap of years prior to the start of a vested pension. So the complaint allegation, which is what the district court had before it, was one in which she's saying I had two benefits. And this is a theme that she repeats before this court in her appellate brief, and I have the citations in terms of when she alleges that. But she's saying I understood that when we were signing off, and she consents to all of these signatures. She signs off on all the different elections along with her husband. And she's saying the disability pension at $460 a month was to bridge the gap to the age 65. Now putting aside the merits of that particular allegation, that's what she's alleging in her complaint. And so she's saying I knew from the start that I was supposed to get an increased pension at age 65. And then I discovered the documents again that were in my apartment when I began to deal with my personal life affairs. And she alleges that in her complaint. Quote, this came to light because two years ago when I was preparing my own will, I reviewed documents and stored boxes, attempting to clean up. And upon sequencing them and reading the plan, I saw the manipulation and that Paul is entitled to a vested pension as elected. So she had all the documents. She actively participated with her husband and with an attorney in making whatever elections she now alleges that have been made. And she carries forward this particular theme in her appellate briefs. On multiple occasions in her appellate briefs, she repeats the theme that the disability pension was a bridge to the vested pension. She does so on page 14 of her brief when she says, quote, I just took what I was told to be the deal, some disability now, more vested later, close quote. Page 19 of her brief, she writes, quote, the letter that I got from, she writes that the letter from 1988 from Ravelon, quote, implies that a disability and vested are separate and there will be more dollars for the vested after 55, and that is correct, close quote. Thank you, Mr. Kresge. Your time has expired. Why don't we hear from Mr. Mancuso next? Good morning, Your Honors. May it please the Court, Robert Mancuso representing Apelli Aurora National Life Assurance Company. In addition to the presentation by Attorney Kresge on behalf of Apelli Ravelon, his focus was of course on the statute of limitations issue. As you know, there's one additional argument or position that the district court used to dismiss Apelli Aurora from this matter, and that's that Aurora, which took over an obligation as an annuity issue, was not a proper plan administrator to be a proper defendant in this recovery for benefits action commenced by the appellant. And we would ask that in addition to the statute of limitations issue, that the court's decision with respect to that issue also be affirmed. It's a separate basis, and as the district court noted, Aurora was not alleged to be the actual plan administrator. We do not believe that they're an administrator under the definition put forth in the statute, and also based on the allegations, there was no conduct or action taken by Apelli Aurora with respect to any rejection of benefits or anything of that nature. So what was your role then? Aurora's role was simply, Ravelon purchased an annuity, actually not even from Aurora, from Executive Life, which went into liquidation some years ago, and Aurora's role was simply to have an annuity that they paid to Aurora, I'm sorry, to Ravelon. For Mr. Moses? For, really for Ravelon's benefit, for purposes of the pension obligation. That was an agreement between Ravelon and Aurora? My understanding, again, I think this is sort of outside of the complaint, but my understanding is that the annuity was purchased by Ravelon from Executive Life. Thank you. Thank you. Mr. Conway? Thank you, Your Honor. Michael Conway, Shipman & Goodwin. I represent Linda Drake. Linda Drake is, was named as the client services representative for Aurora, and as the court below found, she's not a proper party here, not a trustee, not an administrator of the case. Mrs. Moses felt that there should be a human representative named along with Aurora. I've really got nothing more to add than what's been stated by Mr. Mancuso, other than we want to make sure the record is clear. It wasn't clear in the appeal brief whether this second issue was even raised, but to the extent it is deemed raised, we want to make sure that the failure to name a proper party aspect of Judge Sullivan's decision is correct. Thank you, Mr. Conway. Mrs. Moses, you have a little time left. First of all, I'd like to mention that the original annuity was Executive Life. It was bought in 1985, but it was repurchased three years after Ravelon started to pay me this ad hoc disability. So, Ravelon purchased it twice, and once after my payment. So, that annuity has been in the hands of Aurora and Ravelon for 24 years. It's been sitting there untouched. No payment has ever been made. It's sitting there with my husband's name on it. The other thing is, it is true, because the fact is that Ravelon knew what they were doing. They never put one letter or any answer in writing when our attorney sent them the election, notarized, and then the attorney asked me to follow up with three months of these letters saying, I want a vested pension at 65. That's what we're electing, and Ravelon never answered one of those letters. And if I didn't keep those records, there would be no evidence of this election ever being the legitimate attorney election. So that is true. When Ravelon came to me with a disability, it was informal. Ravelon was in a turmoil. They were being brought out by McAndrews and Forbes. The question is, was there even going to be a pension? So they said, you know, just take this now, and then we'll see. And I just, at that point, felt, this has been going on for months. I'm not getting anywhere with this attorney election.      I'll take it. I'll take it. I'll take it. I'll take it. I'll take it. I'll take it. I'll take this now. But when they sent me back that disability election, and I have it, and I enlarged it, they typed in, this election, now, you know, is going to replace everything else that you did before. They put that in on purpose. When I read that, I thought, you know what? I'm never going to see another penny from these people. They won in this case. They did close out my husband's benefits with dignity. He had a little life insurance. He did everything right. But this last plan, and he had health plans, and thank God for those plans, because he was sick.